[Cite as *State v. Bandy*, 2011-Ohio-4332.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| STATE OF OHIO, | ) | |
| | ) | CASE NOS. 10 MA 74 |
| PLAINTIFF-APPELLEE, | ) | 10 MA 121 |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| DIANNA BANDY, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS: Criminal Appeals from Common Pleas Court, Case No. 05 CR 625.


JUDGMENT: Affirmed.


APPEARANCES:
For Plaintiff-Appellee:

Attorney Paul J. Gains
Prosecuting Attorney
Attorney Ralph M. Rivera
Assistant Prosecuting Attorney
21 W. Boardman St., 6th Floor
Youngstown, OH 44503


For Defendant-Appellant:

Attorney Rhys Cartwright Jones
42 North Phelps Street
Youngstown, OH 44503


JUDGES:
Hon. Mary DeGenaro
Hon. Cheryl L. Waite
Hon. Gene Donofrio


Dated: August 24, 2011

DeGenaro, J.

{¶1} Defendant-Appellant, Dianna Bandy, appeals her conviction in the Mahoning County Court of Common Pleas for aggravated assault in violation of R.C. 2903.12(A)(2), a felony of the fourth degree. Bandy first argues that the trial court erroneously admitted evidence that the State failed to disclose during pre-trial discovery; second, that her conviction for aggravated assault is not supported by sufficient evidence; and third, the trial court erred by issuing conclusions of fact when instructing the jury.

{¶2} Bandy's assignments of error are meritless. The State did not violate Crim.R. 16 as it disclosed the materials promptly after receiving them, thus, it was not error to admit the evidence. Second, Ohio courts have consistently held that a car can be a deadly weapon and the facts and circumstances in this case are sufficient to support a finding that Bandy's car was used as a deadly weapon. Finally, the two sentences in the jury instructions that are challenged were taken out of context, and when the instructions are read as a whole, provide guidance to the jury as to how they can determine whether the State met its burden concerning specific elements of the offense; it does not instruct them as to how they should rule. Accordingly, the trial court's ruling is affirmed.

## Facts and Procedural History

{¶3} On May 4, 2009, Galen Culler and his two children, Linda Murphy and Daryl Culler, were at Galen Culler's property. Dianna Bandy is an adjacent neighbor to Galen. Galen and Bandy had an existing and ongoing dispute over the boundary of their property. Daryl testified that he and his sister were present at their father's residence because Galen wanted to mow his lawn, and that every time his father attempted to do this chore he had "a problem with Dianna."

{¶4} Between 3:00 pm and 3:30 pm Galen began mowing his lawn, starting with the area between his driveway and Bandy's garage. Daryl and Linda testified that after several minutes Bandy came out of her house and started screaming at them to "get the f**k off [her] [ ] property." Daryl responded by yelling at Bandy that he was not on her property. Bandy then proceeded to her garage and got into her Jeep.

{¶5} Bandy backed out of her garage and drove towards Galen's property. She

drove back and forth several times over her driveway and onto the grass next to her driveway, spinning her tires. Daryl stood between Bandy, who was in her car, and his father, who was still mowing his lawn. Bandy next drove her car onto the grassy area between her and Galen's property, looked directly at Daryl "with a smirk on her face" and "floored it," driving towards Daryl. Daryl testified he did not move when he saw Bandy driving towards him because he was afraid Bandy was trying to hit his father. Bandy drove towards Daryl and the side mirror of her vehicle hit Daryl's left forearm. Daryl then fell back but did not hit the ground. Daryl testified that Bandy was traveling five to ten miles per hour when she struck him with her car. Daryl also estimated that Bandy was ten to fifteen feet away when she started driving towards him.

{¶6} After striking Daryl, Bandy backed up and then drove onto a grassy area towards Galen's property but stopped driving in that direction when she encountered a ditch. Next, Bandy backed her car and hit a shed located on her property. Bandy then drove her car back over the grassy area between her driveway and Galen's garage and drove out of the area.

{¶7} During this scene, Linda called the police. Officer Donald Davis responded. Upon arriving Officer Davis observed that Daryl was holding his arm, and ruts in the yard that appeared to be from someone driving on the grass. Officer Davis testified that Daryl's injuries appeared to be fresh and consistent with being hit by a car's side mirror. Bandy voluntarily came to the police department and was subsequently arrested.

{¶8} Bandy was indicted on one count of felonious assault (R.C. 2903.11(A)(2)(D)), a second-degree felony. Following a jury trial, Bandy was found not guilty on the felonious assault charge but was convicted of the lesser included offense of aggravated assault (R.C. 2903.12(A)(2)(B)), a fourth-degree felony. The trial court sentenced Bandy to four years of community control sanctions. Bandy filed an appeal, and was subsequently arrested on a probation violation. At the hearing Bandy stipulated to the probation violation, and the trial court revoked the prior community control sanctions and sentenced Bandy to eighteen months in prison, followed by an optional three years of post-release control. Bandy filed a second appeal, and this Court

consolidated both cases.

### Crim.R. 16 Discovery

{¶9} In her first of three assignments of error, Bandy asserts:

{¶10} "The trial court erred in allowing the state to submit evidence that it did not disclose during pre-trial discovery."

{¶11} Bandy argues that she was prejudiced when the trial court allowed the State to enter into evidence four photographs, which the State had only disclosed to Bandy that morning. The State counters that it did not violate Crim.R. 16 because it did not possess or have knowledge of the photographs until the morning of trial, and once it possessed the photographs it promptly disclosed the discoverable material.

{¶12} Crim.R. 16(B)(1)(c) provides that: "[u]pon motion of the defendant the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph books, papers, documents, photographs * * * available to or within the possession, custody or control of the state, and which are material to the preparation of his defense, or are intended for use by the prosecuting attorney as evidence at the trial, or were obtained from or belong to the defendant." Once the defendant has requested discovery, the prosecution is under a continuing duty to promptly disclose any additional discoverable material it receives. Crim.R. 16(D).

{¶13} The State did not violate Crim.R. 16 when it disclosed photographs the day of trial. Counsel for the State informed the trial court that he did not even receive the photographs until an hour before trial and that he had no knowledge of their existence before that morning. Bandy's counsel and counsel for the State discussed and examined the twenty photographs, and the parties picked out seven photographs that they deemed relevant. The State only introduced four of the photographs into evidence. Thus, the State satisfied its duty under Crim.R. 16(D) when it promptly shared the photographs with counsel the same morning it received them.

{¶14} Moreover, even if a party violates Crim.R. 16 the trial court may craft the appropriate remedy given the facts and circumstances of the violation, including: ordering the party to permit discovery or inspection, granting a continuance, prohibiting the party

from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances. Crim.R. 16(E)(3). Consequently, "[p]rosecutorial violations of Crim.R. 16 are reversible only when there is a showing that (1) the prosecution's failure to disclose was a willful violation of the rule, (2) foreknowledge of the information would have benefited the accused in the preparation of his defense, and (3) the accused suffered some prejudicial effect." *State v. Joseph* (1995), 73 Ohio St.3d 450, 458, 653 N.E.2d 285 (citing S*tate v. Parson* (1983), 6 Ohio St.3d 442, 445, 6 OBR 485, 488, 453 N.E.2d 689, 692; *State v. Moore* (1988), 40 Ohio St.3d 63, 66, 531 N.E.2d 691, 694-695); see, also, *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864 at ¶113.

{¶15} There is no evidence that the State's violation of Crim.R. 16 was willful. The record indicates that the State did not possess the photographs until an hour before the trial and that it had no prior knowledge of their existence. Additionally, there is no indication that foreknowledge of the photographs would have benefited Bandy. The photographs depict the lawn on Galen's and Bandy's property the day of the incident and depict what appears to be ruts and tire marks in the lawn. Bandy's attorney did not dispute the authenticity of the photographs and did not indicate why additional time would be necessary to review the photographs. Indeed, Bandy's attorney reviewed the photographs with the prosecution the morning of trial. Finally, Bandy does not indicate what, if any, prejudice she suffered when the court allowed the State to enter the photographs into evidence. Thus, Bandy's first assignment of error is meritless.

### Sufficiency of the Evidence

{¶16} In her second assignment of error, Bandy asserts:

{¶17} "Insufficient evidence supported the conviction and the manifest weight of the evidence supported acquittal."

{¶18} Bandy argues that there was insufficient evidence to support her conviction for aggravated assault because the State did not prove that she used a deadly weapon, an element of the offense. Bandy argues that an automobile traveling only five to ten miles per hour cannot legally be a deadly weapon. The State counters, arguing that a car

traveling five to ten miles per hour is a deadly weapon under R.C. 2923.11.

{¶19} Although Bandy also asserts that the conviction was against the manifest weight of the evidence, she makes no arguments why this court should review the case on this basis. Bandy only raises a legal question, whether the automobile in this case meets the legal definition of a deadly weapon. Moreover, the State does not dispute Bandy's underlying factual assertions, that the car was traveling five to ten miles per hour when it struck Daryl. Thus, we will not consider whether the evidence is against the manifest weight, and only review the case on sufficiency of the evidence grounds.

{¶20} "Sufficiency of the evidence is the standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict." *State v. Smith* (1997), 80 Ohio St.3d 89, 113, 684 N.E.2d 668. Thus, sufficiency is a test of adequacy. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Smith* at 113. (citation omitted).

{¶21} Bandy was convicted of one count of aggravated assault in violation of R.C. 2903.12(A)(2)(B) which provides in pertinent part that no person shall knowingly "[c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." R.C. 2923.11(A) defines "deadly weapon" as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon."

{¶22} When an automobile is used in a manner likely to produce death or grave bodily harm, it can be classified as a deadly weapon under R.C. 2923.11. *State v. Tortarella*, 11th Dist. No. 2002-L-147, 2004-Ohio-1175, at ¶64; *State v. Allsup*, 3d Dist. Nos. 6-10-06, 6-10-07, 2011-Ohio-405, at ¶23. "When determining whether an automobile is a deadly weapon, a court should consider the intent of the user, the nature of the weapon, the manner of its use, the actions of the user and the capability of the

instrument to inflict death or serious bodily injury." *State v. Evans*, 10th Dist. No. 01AP-112, 2002-Ohio-3322, ¶22 citing *State v. Gimenez* (Sept. 4, 1997), 8th Dist. No. 71190, *State v. Upham* (May 12, 1997), 12th Dist. No. CA96-08-157.

**{¶23}** Daryl testified that Bandy backed up her vehicle, looked directly at Daryl "with a smirk on her face" and "just floored it" towards Daryl and his father Galen. Bandy was not using her vehicle in the way it was designed or intended to be used. Bandy drove her car onto the grass between two residential homes and hit Daryl. Although Daryl testified that Bandy was only traveling five to ten miles per hour, a Jeep is a heavy and large instrument capable of inflicting death or serious bodily injury, even at a relatively slow speed. Thus, there is sufficient evidence for a jury to find, beyond a reasonable doubt, that when Bandy drove her Jeep towards Daryl and struck him with it, the vehicle was a deadly weapon. Bandy' second assignment of error is meritless.

### Jury Instructions

**{¶24}** In her third and final assignment of error, Bandy asserts:

**{¶25}** "The trial court erred in issuing conclusions of fact in its jury instructions."

**{¶26}** Bandy asserts that the court committed plain error when it gave two jury instructions which indicated the actus reus and jurisdictional elements of the offense were satisfied. The State argues that the jury instructions, when reviewed as a whole, were complete and accurate and did not result in a manifest miscarriage of justice.

**{¶27}** A "criminal defendant is entitled to have the trial court give complete and accurate jury instructions on all the issues raised by the evidence. *State v. Sneed* (1990), 63 Ohio St. 3d 3, 9, 584 N.E.2d 1160. A single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge. *State v. Price* (1979), 60 Ohio St.2d 136, 398 N.E.2d 772, at paragraph four of the syllabus; *State v. Baker* (1993), 92 Ohio App.3d 516, 536, 636 N.E.2d 363. Thus a review court considers the whole charge rather than separate portions of a charge. Id.

**{¶28}** Unless a party objects to jury instructions before the jury retires to consider its verdict he waives "all arguments regarding those jury instructions except for plain error." *State v. Moore*, 7 Dist. No. 02 CA 152, 2004-Ohio-2320, citing *State v. Hartman*

(2001), 93 Ohio St.3d 274, 289, 754 N.E. 2d 1150. "Plain error is one in which but for the error, the outcome of the trial would have been different." *State v. Hancock*, 7th Dist. No. 09-JE-30, 2010-Ohio-4854, at ¶55, citing *State v. Long* (1978), 53 Ohio St.2d 91, 97, 372 N.E.2d 804. Bandy's attorney did not object to the trial court's jury instructions, thus we review for plain error.

{¶29} Bandy asserts the trial court erred when it stated first, that "the offense charged took place on or about the 4th day of May, 2009" and second, that "the offense took place in Mahoning County, Ohio." Bandy argues that these statements amount to the trial court finding that the State's burden of proving the actus reus and jurisdictional elements of the crime were met.

{¶30} But Bandy takes the trial court's statements out of context. During this part of the jury instructions which span 23 pages of the transcript, the trial court laid out in general terms the elements of the offense which the jury must find to convict Bandy. The court then specifically reviewed what the jury must conclude to find that the State proved each element. Thus, the two statements Bandy asserts are plain error amount to subject headings for the elements of the crime. Read in context, it is clear that the trial court did not instruct the jury that the offense had taken place on a certain day or in a certain county, but instead the court was explaining what facts the jury must find in order to find each element of the crime was satisfied. The trial court simply used declarative statements to allow the jury to more easily follow its jury instructions:

{¶31} "The defendant is indicted for felonious assault, you must find that on or about May 4th, 2009, in Mahoning County, State of Ohio, that the defendant did knowingly cause or attempt to cause physical harm to Daryl Culler by means of a deadly weapon.

{¶32} "The offense charged took place on or about the 4th day of May, 2009. It is not necessary that the state prove that the offense was committed on the exact day in which it was charged in the indictment. It is sufficient to prove that the offense took place on a date recently near the date claimed.

{¶33} "The offense charged took place in Mahoning County, Ohio. The right of

this Court to try the defendant depends upon proof that the offense was committed in this county."

**{¶34}** Additionally, the trial court properly instructed the jury as to the relative burdens of the parties. The court stated that "the defendant must be acquitted unless the state produces evidence which convinces you beyond a reasonable doubt of every essential element of the crime charged in the indictment." When reviewed as a whole, the jury instructions do not amount to plain error. Bandy's third assignment of error is meritless.

**{¶35}** In conclusion, the trial court properly admitted photographs that the State did not possess or know existed, until the morning of trial. Second, Bandy's conviction is supported by sufficient evidence because when she drove her car directly at Daryl and hit him with her side mirror, she used her car as a deadly weapon as defined under R.C. 2923.11. Finally, the jury instructions were accurate, complete, and did not draw factual conclusions. Accordingly, the judgment of the trial court is affirmed.

Waite, P.J., concurs.

Donofrio, J., concurs.